People *v.* Ybarra.

# THE PEOPLE *v.* YBARRA.

Upon trial for murder, the dying declarations of the deceased were admitted in evidence, under proof that she, at the time of making them, was lying down, suffering very much from the effects of a mortal gunshot wound in the abdomen; that she died about four o'clock, p. m., of the next day after she was shot. One witness testified that before noon of that day, deceased answered "she believed she was going to die, and called on God to bless her." Another witness testified—"An hour before she died they were at prayer. I had conversation with her three or four hours before. She was in great misery all the time—never was easy, and was continually failing. She told me that Pedro," etc., then follows the statement: *Held,* that her dying declarations were properly admitted.

Where, upon such trial, the dying declarations of the deceased were admitted, and the Court instructed the jury that if these declarations were true they should find defendant guilty; and the witness who testified upon the subject stated that the deceased told him, "that Pedro, the man with whom she had been living, had shot her," and he identified defendant as the man with whom she had been living; and the evidence connecting the defendant with the commission of the offense was principally circumstantial, and the only direct and positive testimony to that effect was the testimony of this witness: *Held,* that the instruction was improper, because within Art. VI, sec. 17 of the Constitution, which declares that "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

This provision is violated whenever a Judge so instructs as to force the jury to a particular conclusion upon the whole or any part of the case, or to take away their exclusive right to weigh the evidence and determine the facts. The meaning of the provision is, that the Judge shall decide upon the law and the jury upon the facts, and that the former shall not invade the province nor usurp the powers of the latter.

An error of the Judge in violating this provision of the Constitution would not, under all circumstances, be sufficient cause for reversal. *Prima facie* it would be sufficient; but no more importance is to be attached to an error of this nature than any other. If no injury could possibly have resulted from it, it cannot vitiate the judgment.

Abstract and immaterial error is insufficient to reverse a judgment; but when error is shown, the burden of showing its immateriality rests upon the party in whose favor it was committed.

Where an instruction given could under no circumstances be correct, the legal presumption is that the error was to the prejudice of the party against whom the error was committed.

In a criminal case it would require the most conclusive showing that the error did not prejudice the party, to induce this Court to disregard it.

The statute (Wood's Dig. 301, art. 1655) authorizes the Judge, on the trial of a criminal case, at the request of the jury on their return into Court, to state to them the testimony of a witness.

People *v.* Ybarra.

An indictment for murder averring, in substance, that the defendant with malice aforethought, by means of a loaded pistol, made an assault upon the deceased, and discharged the pistol upon and against her body, causing a mortal wound of which she died the next day, is sufficient, though not embracing the usual technical language and the formal allegations of the precedents.

APPEAL from the Sixteenth District.

The facts appear in the opinions of the Court.    Defendant appeals.

*Robinson & Beatty*, for Appellant.

I.  There was no sufficient foundation laid for the admission of the dying declarations of the deceased.    (1 Greenl. Ev. sec. 158; 1 Cow. & H. notes, 606 et seq.; 2 Russel on Crimes, 752 et seq.)

II.  In charging the jury what the witness Thorn swore, the Judge exceeded his duties.    (Wood's Dig. 301, secs. 1669 and 1655.)

III.  The indictment is insufficient to sustain the judgment of the Court, or to vest the Court with jurisdiction.    (1 Russel on Crimes, 562; Wharton's Crim. Law. 489; Wharton's Precedents, 44, note *n*, and 47; 3 Chitty's Crim. Law, 752 and notes; 9 Cal. 273; 6 Id. 207; 7 Id. 403; 10 Id. 309.)

IV.  The charge that "If the deceased made the declarations stated, and those declarations are true, the prisoner is guilty and the jury should so find," is wrong.    The error of this charge consists in the fact, that it might be true that the defendant shot the deceased and still he not be guilty of murder.

*Thos. H. Williams, Attorney General*, for Respondent.

At the January term, 1860, BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

Indictment for murder.    The defendant was indicted in Calaveras county for murder, and convicted of the first degree of that crime.    Upon the trial, the declarations of the deceased, a Mexican woman named Juana, were admitted.    The deceased, at the time of making these declarations, was lying down, suffering very much from the effects of a mortal gunshot wound, received in the abdomen.    She died about four o'clock, P. M. of the next day after

she was shot.  One witness testified that before noon of that day, Juana answered " she believed she was going to die, and called on God to bless her."   Thorn, another witness, testified : " An hour before she died, they were at prayer.   I had conversation with her three or four hours before.   She was in great misery all the time, never was easy, and was continually failing.   She told me that Pedro," etc. ; then follows the statement.   The wound was unquestionably mortal.   The rule as to the admission of dying declarations is thus stated by Mr. Greenleaf : (1 Greenl. Ev. sec. 160) " The *circumstances* under which the declarations were made are to be *shown to the Judge;* it being his province, and not that of the jury, to determine whether they are admissible.   In Woodcock's case, the whole subject seems to have been left to the jury, under direction of the Court, as a mixed question of law and fact ; but subsequently it has always been held a question exclusively for the consideration of the Court, being placed on the same ground with the preliminary proof of documents, and of the competency of witnesses, which is always addressed to the Court.   But after the evidence is admitted, its credibility is entirely within the province of the jury, who of course are at liberty to weigh all the circumstances under which the declarations were made, including those already proved to the Judge, and to give the testimony only such credit as, upon the whole, they may think it deserves."

The same author (sec. 158) says : " It is essential to the admissibility of these declarations, and is a preliminary fact, to be proved by the party offering them in evidence, that they were *made under a sense of impending death,* but it is not necessary that they should be stated at the time to be so made.   It is enough if it satisfactorily appears in any mode, that they were made under that sanction ; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind.   The length of time which elapsed between the declaration and the death of the declarant, furnishes no rule for the admission or rejection of the evidence, though in the absence of better testimony, it may

People *v.* Ybarra.

serve as one of the exponents of deceased's belief, that his dissolution was or was not impending. It is the *impression* of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible. Therefore, where it appears that the deceased, at the time of the declaration, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued in an hour afterward, the declaration is inadmissible. On the other hand, a belief that he will not recover is not in itself sufficient unless there be also the prospect of ' almost immediate dissolution.' "

1. We think the circumstances of the case, as shown by the witnesses, warranted the admission of the testimony. The evident danger of such a wound as that shown, with the immediate effect upon the victim produced by it, even unaccompanied by the other circumstances corroborating the idea of her sense of her true condition, would probably have been sufficient to admit her declarations, but with the other circumstances, they leave no doubt as to the propriety of the admission.

2. The Judge, at the request of the jury on their return into Court, stated to them the testimony of the witness, Thorn. This is assigned for error. But the statute (Wood's Dig. 301, art. 1665) seems to give this authority to the Judge. We must presume that he exercised it properly.

3. The last error assigned is, that the indictment is fatally defective. We do not perceive any fatal error in this pleading, although it is not very artificially drawn. It avers, in substance, that the defendant, with malice aforethought, by means of a loaded pistol, made an assault upon the deceased, and discharged the pistol upon and against her body, causing a mortal wound, of which she died the next day. Though the usual technical language, and the formal and precise allegations found in the precedents are not employed, yet we think no person of ordinary understanding could fail to comprehend, from the phraseology used, that the defendant is distinctly charged with the crime of murdering the deceased, and that every element of such crime is distinctly asserted.

12

A rehearing having been granted and had, COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

We adhere to the views expressed by us upon the questions considered in our former opinion in this case, but a point is now made which we think is fatal to the judgment. On the trial the prosecution gave in evidence the dying declarations of the deceased, and the Court instructed the jury that if these declarations were true they should find the defendant guilty. The witness who testified upon the subject, stated that the deceased told him " that Pedro, the man with whom she had been living, had shot her ; " and he identified the defendant as the man with whom she had been living. The evidence connecting the defendant with the commission of the offense was principally circumstantial ; and the only direct and positive testimony to that effect was the testimony of this witness. The instruction given assumed the existence of every fact necessary to convict, except the truth of the declarations made by the deceased ; and the effect was to compel the jury to render a verdict in accordance with their opinion upon that question. We see no difference between such an instruction and an instruction directly upon the facts ; and we have on frequent occasions expressed our disapprobation of the practice of interfering with the discretion of juries in matters of evidence. " The jury," says Chitty, " are as much judges of the fact as the Courts are of the law, and have an absolute power to acquit or convict ; and it would be a great responsibility for the mind of a Judge if he were to decide on the guilt or innocence of the prisoner." (1 Chit. Crim. Law, 528.) The rule at common law appears to be that a Judge may express to the jury his opinion in regard to the weight of evidence. (*Commonwealth* v. *Childs*, 10 Pick. 252.) But it has been held in Alabama that a Court should not charge as to facts, even in a civil case. (*Tubbs* v. *Madding*, 1 Minor, 129.) It is unnecessary to inquire whether the instruction in this case was in violation of the principles of the common law ; it was clearly within the prohibition of the Constitution, and cannot be maintained without disregarding the express provisions of that instrument. The language of the Constitution is, that " Judges shall not charge juries with

respect to matters of fact, but may state the testimony and declare the law. (Const. art. 6, sec. 17.) This provision is violated whenever a Judge so instructs as to force the jury to a particular conclusion upon the whole or any part of the case, or to take away their exclusive right to weigh the evidence and determine the facts. The meaning of the provision is, that the Judge shall decide upon the law, and the jury upon the facts, and that the former shall not invade the province nor usurp the powers of the latter. The Judge has no more right to control the opinion of the jury upon a matter of fact, than the jury have to disregard the directions of the Judge upon a matter of law. Whether an error of the Judge in this respect would, under all circumstances, be sufficient cause for reversal, is a different question. There is no doubt that, *prima facie*, it would be sufficient; but we think no more importance is to be attached to an error of this nature than any other. If no injury could possibly have resulted from it, we do not see upon what principle it could be held to vitiate the judgment. We have always refused to reverse for mere abstract and immaterial errors; but when error is shown, the burden of establishing its immateriality rests upon the party in whose favor it was committed. Of course, a party alleging error must show it; but when he shows an instruction which is applicable to the case, and which under no state of facts could be correct, he has done all that the law requires to entitle him to a reversal; and unless it appear that his rights could not have been affected by the error, it would be a mockery of justice to permit the judgment to stand. Under no circumstances could the instruction given in this case be correct, and the legal presumption is that the error was to the prejudice of the defendant. There is nothing in the record to overcome the effect of this presumption; and in any criminal case it would require a most conclusive showing to satisfy us of the propriety of disregarding an error of this nature. In the *People* v. *Ah Fung et al.* (16 Cal. 137) the defendants were indicted for murder, and on the trial the Court instructed the jury that if the evidence of one of the witnesses was true, the defendants were guilty of the offense charged. The witness alluded to had not seen the deceased after the commission of the offense, and his testimony did not establish the homi-

cide.  It was contended that there was no controversy upon that point, and that the Court was correct in assuming the existence of the fact.  We held otherwise, saying : " We do not know, nor can we ascertain what particular matters were controverted before the jury, but we think the Court had no right to assume the existence of any fact not expressly admitted."

Judgment reversed, and cause remanded for a new trial.