[Crim. No. 1669.   Third Appellate District.—March 29, 1939.]

THE PEOPLE, Respondent, v. CHARLES POLLOCK, Appellant.

T. F. Peterson for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with murder of the second degree. He was twice convicted of manslaughter. The first judgment was reversed for failure to

prove the venue of the crime. (*People* v. *Pollock*, 26 Cal. App. (2d) 602 [80 Pac. (2d) 106].) The defendant failed to plead former acquittal of the higher offense of murder. But respective counsel erroneously conceded he could not be convicted of an offense higher than manslaughter. The second jury, therefore, again found him guilty of manslaughter. The defendant made a motion for a new trial. The determination of that motion was delayed for twenty-five days after the rendering of the verdict. On the same date that the new trial was denied the court pronounced judgment of conviction against the defendant. The defendant and his attorney were then present in court. No objection to those proceedings was made. There was no motion in arrest of judgment. For the first time, on appeal, the jurisdiction of the court was challenged on the ground that the determination of the motion for new trial and the pronouncing of judgment were delayed beyond the limitation of time prescribed therefor in section 1191 of the Penal Code.

December 31, 1937, the defendant, Charles Pollock, Alexander J. Frazier, and several other half-breed Indians were celebrating New Year's Eve at a cabin near Miranda in Humboldt County. They had been drinking wine and all of them were somewhat intoxicated. Both the defendant and Alexander Frazier were quarrelsome under the influence of liquor. Charles Pollock was a powerful young man weighing 175 pounds. His adversary weighed but 127 pounds and was afflicted with rheumatism. Toward midnight an altercation arose among the revelers and a conflict ensued. It finally ended in a fatal encounter between the defendant and Mr. Frazier. The cause and the circumstances of the affray are rather uncertain, due, no doubt, to the characteristic reluctance of Indians to testify against individuals of their own race. During the fight the defendant gained possession of a knife from his friend Leo Svendson, with which he viciously stabbed and slashed Frazier so seriously as to result in his death seventeen hours later. The left lung of the deceased was punctured by a stab in the back. He received a gaping slash nearly a foot in length from a point under the arm around and across a part of his chest. A three-inch incision penetrated his abdomen, through which opening his bowels emerged. He received other serious cuts on his hand and

elsewhere. He was later removed by the officers to the Eureka Hospital, where he received a transfusion of blood and other medical care. He died from his wounds the following afternoon.

The defendant, in company with his wife, visited a near-by gas station about 1:30 A. M. following the affray. He was then in a furious temper, declaring that he had done a good job and threatening to return "to finish the job" and to kill Mr. Frazier's baby.

A reversal of the judgment is sought upon the grounds that the court erred in admitting in evidence a purported dying declaration of the deceased without first requiring adequate proof that it was made under a sense of impending death; that the court erred in admitting in evidence the defendant's extra-judicial statement of facts without an adequate showing that it was voluntarily made; that the court erred in admitting in evidence certain alleged hearsay declarations for the purpose of impeachment; that the court erred in overruling objections to incompetent hypothetical questions based on incomplete recitations of facts; that the district attorney was guilty of prejudicial misconduct in his argument to the jury; that the court erred in giving to the jury and in refusing certain instructions, and that the court lost jurisdiction to deny the motion for new trial and to pronounce judgment by its failure to do so within fifteen days after the return of the verdict as required by section 1191 of the Penal Code.

The foundation for the admission in evidence of the alleged dying declaration of the deceased was adequately established to show that it was made under a sense of impending death. Moreover, our attention is not called to any statement which the deceased made that is prejudicial to the defendant. He did not even charge the defendant with cutting him. He related no details of the conflict which resulted in the fatal stabbing. All that he said was that "they got him this time" and that "he was going to die" from his wounds.

The evidence shows without conflict that the deceased was fatally cut in the affray. A deep stab in the back penetrated his left lung. He was slashed across the chest. There was a deep cut nearly a foot in length from beneath the left arm around and across the left chest. His right hand was badly

cut. Numerous other incisions existed upon the body. A deep cut three inches in length between the navel and the lower rib had literally disemboweled him. His bowels lay in a mass on his lap. Some of them were seriously cut. He had been taken to the Eureka Hospital for treatment. The physician knew he was fatally injured. He died within seventeen hours of the time he was stabbed. A blood transfusion occurred about an hour before he died. While he was being wheeled to the operating room, and while he was moaning, writhing in pain and suffering great agony, he told his wife that he did not expect to live. He did not say how soon he expected to die. But it is apparent from his serious condition, and from what he said, that he had abandoned hope of living and that he believed his death was imminent. At least there is substantial proof of that fact. ▮ It is the province of the trial judge to determine the sufficiency of the foundation proof which will entitle dying statements to be admitted in evidence. Unless there is an apparent abuse of discretion in that regard, the ruling of the court will not be disturbed on appeal. (1 Wharton's Crim. Ev. 527, sec. 275b; *People* v. *Ybarra*, 17 Cal. 166.)

The record discloses the following examination of Mrs. Frazier with respect to her husband's condition:

"Now just tell the jury please and Judge Falk what Mr. Frazier said concerning his condition, physical condition, and whether or not he expected to live. . . . A. Well, he told us that they got him this time; . . . that he didn't expect to live. . . . Q. And did he tell you whether or not he expected to pull through? A. He told us that he didn't expect to live."

It is evident he had abandoned hope of living. It is reasonable to believe that anyone of ordinary intelligence who was disemboweled and in the serious condition Mr. Frazier was after the affray, would realize he could not possibly live. When he said that "he didn't expect to live" he evidently knew death was impending. We are of the opinion the preliminary proof was sufficiently established to entitle even a dying declaration to be admitted in evidence. The statements in question amount to no more than mere declarations of facts or circumstances, which do not require the same strict proof of realization of impending death.

It is suggested that since the defendant was on trial for manslaughter as distinguished from murder, the dying declarations were hearsay and inadmissible in evidence. The rule regarding the preliminary proof necessary to entitle dying declarations to be admitted in evidence applies to manslaughter just as it does to murder. (1 Wharton's Crim. Ev., 10th ed., 539, sec. 276.) In determining the frame of mind of the declarant regarding his belief with respect to impending death, the court may consider his physical condition, the nature and seriousness of his wounds, his knowledge of his grave condition, his conduct, language and statements. (1 Wharton's Crim. Ev., 10th ed., 535, sec. 275c.) It is not necessary that the injured person shall believe he will die immediately, provided he assumes he will not recover from his injuries and that death is impending. The duration of time which elapses between the declaration and the actual death of the person furnishes no criterion for the admission or the rejection of the evidence. (*People* v. *Ybarra, supra.*) Numerous cases have sustained the admission of dying declarations under circumstances no more serious than those which appear in this cause. (*People* v. *Shortridge,* 179 Cal. 507 [177 Pac. 458] ; *People* v. *Lee Sare Bo,* 72 Cal. 623 [14 Pac. 310] ; *People* v. *Ybarra, supra.*) In the case of *People* v. *Gray,* 61 Cal. 164 [44 Am. Rep. 549], it is said that proof of a sense of impending death need not be proved by express statements to that effect, but may be determined from the condition of the injured person and from the surrounding circumstances which are disclosed in the preliminary showing. In the present case we are of the opinion the evidence that the statements of the deceased were made in view of impending death is adequate to support his declarations; that the challenged statement does not amount to a dying declaration and is, therefore, not subject to the same strict rule relied upon by the appellant.

It was not prejudicial misconduct for the district attorney to ask the defendant on cross-examination if he did not tell his wife that ''If you had to go to San Quentin you were going to kill the (Frazier) baby?'' To that question the defendant replied, ''No sir''. The question and answer were received in evidence without objection. That question was relevant. The district attorney in good faith believed de-

fendant had so stated to his wife at the gas station shortly after the affray occurred, while he was still under the influence of great anger. The statement implied that he was conscious of his own guilt when he assumed he might have to go to state prison for the crime he had committed. It also furnishes some evidence that he assaulted and slew Frazier with an abandoned and malignant heart, and that he was anxious to inflict as great injury upon the Frazier·family as possible by killing their baby. ▉ Evidence of malice, as defined in section 188 of the Penal Code, and the intention with which the assault was committed were competent. These elements were proper issues to be determined in the case. Malice is a necessary element of the crime of murder.

The defendant was on trial for murder of the second degree. Evidence of malice and of the intent with which the crime was perpetrated were proper issues to be determined. ▉ After a reversal of the first judgment of conviction of manslaughter it was necessary for the defendant to specifically plead former acquittal of the higher offense in order to take advantage of that defense. He failed to do so. Respective counsel erroneously conceded that he could not be convicted of an offense greater than that of manslaughter. Based upon their stipulation the court so instructed the jury. Under the circumstances of this case the jury might have properly convicted the defendant of the crime of murder of the second degree. ▉ The rule is well established that after the reversal of a judgment of conviction of an offense less in degree than, and included within the higher crime with which one is charged, upon a retrial of the case the defendant must specifically plead acquittal of the higher degree of the crime, or he waives that defense. The verdict of guilty of a lower degree included in a greater crime does not automatically acquit an accused person of the higher offense unless he specifically claims that result by pleading ''once in jeopardy'' or ''former acquittal''. (*People* v. *Grill*, 151 Cal. 592, 598 [91 Pac. 515]; *People* v. *Fry*, 137 Cal. App. 525, 532 [31 Pac. (2d) 204]; *People* v. *Solani*, 6 Cal. App. 103 [91 Pac. 654]; *In re Moore*, 29 Cal. App. (2d) 56 [84 Pac. (2d) 57]; 7 Cal. Jur. 995, sec. 132; 4 Cal. Jur. Ten-year Supp. 526, sec. 132.) The questions of malice and intention with which the crime was committed were therefore proper issues to be determined.

■ Nor did the court err in overruling defendant's objection to a similar question propounded on cross-examination to the wife of the defendant. She was asked if her husband had not told her at the gas station just after the cutting affray took place that "If I have to go to San Quentin I will go and kill the (Frazier) baby". To that question she replied "No sir". She was asked if she had not told Mr. Woodruff, the proprietor of the gas station, substantially the same thing, and urged him "Not to let Mr. Pollock go away because he was going to kill the (Frazier) baby". She denied those statements. On examination in chief of Mrs. Pollock, the attorney for the defendant first asked these very questions. The inquiry regarding those statements was, therefore, invited by the interrogatories propounded by the defendant's attorney. They were competent and material in laying the foundation for impeachment of Mrs. Pollock. The district attorney was in good faith in asking the questions. He thereafter called Mr. Woodruff, and asked him, "Did Mrs. Pollock say to you, 'don't let him go over and kill the baby, he has been threatening to do it?' ", to which he replied, "Yes, she told me that". He also said that the defendant stood 25 or 30 feet from them when Mrs. Pollock made that statement. The form of the questions is not criticized. There is no question regarding the time, place and parties who were present when the statement was made. There is no prejudicial error in that ruling.

■ While it is true that a witness may not be impeached upon an irrelevant and collateral matter, he may be impeached by evidence that he has made at another time inconsistent and contradictory statements regarding a material issue in conflict with his testimony at the trial. (Sec. 2052, Code Civ. Proc.; 27 Cal. Jur. 146, sec. 122; *People* v. *Nyland,* 41 Cal. 129.) In the case last cited the court said:

"There was no error in allowing the prosecution to show by other witnesses that Mrs. Nyland, the wife of defendant, had given a different account of what occurred at the time of the robbery from that testified to by her while on the stand."

■ As a general rule evidence of the commission of, or threat to commit, an offense other than the one for which the defendant is being tried, is not competent or admissible, since proof of another crime ordinarily has no tendency to establish

the offense charged, and it is likely to be unjustly prejudicial. But that rule is subject to a well-established exception, to the effect that evidence which is relevant and competent to prove any material issue of the case on trial, as a part of the *res gestae*, or which tends to establish the guilt of the defendant by proving a material fact involved therein, or helps to disclose the motive or intention with which the act was performed, is admissible, even though it tends to prove an attempt or a threat to commit another offense. (13 Cal. Jur. 703, sec. 84; *People* v. *Prantikos*, 164 Cal. 113 [127 Pac. 1029].)

In the present case the defendant relied on the doctrine of self-defense. He claimed he was not the aggressor in the affray. The alleged statement that if he had to go to San Quentin for slaying Alexander Frazier he would go back and kill his baby, furnishes some evidence of his consciousness of guilt of the offense with which he was charged. It also supplies evidence of the animus, malice and ill will which he possessed toward the deceased. That statement tends to indicate that he stabbed Frazier as a result of an abandoned and malignant heart. It suggested a desire to inflict as great injury upon the Frazier family as possible. It was part of the *res gestae* of the offense with which he was charged. It tended to establish a material issue in the case. That statement was not first elicited by the prosecution. Upon the inquiry of defendant's attorney, the defendant first voluntarily asserted that he made no such statement. In the defendant's presence his wife denied that she communicated that fact to either Mrs. Frazier or to Mr. Woodruff. It was material and competent to impeach Mrs. Pollock by calling Mr. Woodruff who testified that she told him substantially that very thing that her husband had threatened to go back and kill the baby and she tried to persuade Woodruff not to permit him to do so. The rulings upon those challenged questions do not constitute error.

We find no reversible error in the conduct of the district attorney in his arguments to the jury. His comments regarding the reluctance of several witnesses to testify to the circumstances of the affray were merely reasonable inferences drawn from the conduct of the witnesses on the stand. The fact that they were present in the cabin at the time the

stabbing occurred warranted him in arguing that they appeared to be suppressing facts within their knowledge.

In response to the assertion of counsel for the defendant that the district attorney vouched for the testimony of the witness, Stevenson, by placing him on the stand, the prosecuting officer did say he had struggled in vain to get the facts from the witnesses at the coroner's inquest and at the preliminary examination. On application of the defendant the court instructed the jury to disregard those remarks. They were improper, but they were harmless. The jury could readily see from their conduct they were not willing witnesses. The statements do not constitute reversible error. The case of *People* v. *Adams*, 92 Cal. App. 6 [267 Pac. 906], relied upon by the appellant in this case, is not in conflict with what we have previously said regarding the alleged misconduct of the district attorney. In that case the prosecuting officer deliberately and repeatedly stated to the jury that he was present when certain transactions occurred regarding which witnesses had testified, and that he personally knew that the facts related by them were true. After the court had ruled out such statements and had admonished the prosecuting officer he persisted in repeating them. That case, and the other ones relied upon by the appellant are readily distinguishable from the facts of the present suit.

We are of the opinion the court did not err in overruling objections to hypothetical questions asked of Doctor Wallace, the county physician, for the purpose of determining the effect upon the deceased of the serious wounds which he received. It was contended the questions did not contain all of the necessary facts upon which a physician could accurately determine the effect of the injuries upon the deceased. After the first question was asked, further facts were elicited by specific inquiries from the doctor. The challenged question might have been more specific, but we are of the opinion it was sufficiently accurate to enable the doctor to say with assurance that a person so afflicted would labor for breath and that he would not be able to carry on a fight requiring great energy and vigor. Answering the first challenged hypothetical question, the doctor concluded that one whose lung was punctured from a stab in the back would find his breathing capacity restricted; that the lung would collapse and there

would be a loss of vitality. That response amounted to a mere declaration of what is common knowledge. That ruling was neither prejudicial nor erroneous.

Another hypothetical question to which the appellant objected involved the effect of the slit in the abdomen which caused the bowels to emerge from the cavity. It is contended that question misstates the facts in reciting that the intestines were perforated in three or four places. We are of the opinion the facts were enlarged in that respect. The evidence is uncertain in that regard. Great care should be taken to accurately relate the facts disclosed by the evidence in propounding a hypothetical question. But the challenged question was sufficiently accurate in that regard. The result of the puncturing of the intestines in one or more places under the circumstances of this case could not possibly materially change the effect which followed or the conclusion of the physician regarding that result. Doctor Burre, upon whose testimony the hypothetical question was based, said that the incision beneath the navel ''penetrated through the abdominal wall *and through part of the intestinal tract*''. He also testified that death was due to ''peritonitis, *due to intestinal perforation*''. The victim was entirely disemboweled. His bowels emerged from the abdominal cavity and lay in his lap. There can be no possible doubt of the fatal result of such serious wounds as were inflicted on the deceased. The objection to that question was properly overruled. At least the evidence was not prejudicial.

The case of *People* v. *Salaz*, 66 Cal. App. 173 [225 Pac. 777], upon which the appellant relies, is clearly distinguishable from the present case. In that case the physician testified positively from the facts related in the hypothetical question, based on the nature of the wounds received, that the man who did the shooting was ''not immediately in front, but what we might call diagonal towards the left and in front of deceased''. Clearly that reply was speculative. It was not within the realm of expert testimony. In the present case the physician merely testified to the loss of vitality and the probable inability of a man to carry on an aggressive encounter with a stab in the lung, a gaping slit across the chest and an opening in the abdomen which literally disemboweled

him. If that was not a legitimate subject of expert testimony the conclusion of the witness was self-evident and harmless.

■ After carefully reading the charge to the jury as a whole, we are convinced there is no prejudicial error in any of the challenged instructions. The jury was very fully and fairly instructed on all the essential issues of the case.

■ The determination of a motion for new trial and the pronouncing of judgment in a criminal case are procedural in their nature, and, in the absence of a miscarriage of justice, may not be disturbed on appeal, even though they occur after the statutory lapse of time prescribed therefor. There is no miscarriage of justice in the present case, and the delay in denying the motion for new trial and in pronouncing judgment therefore do not constitute reversible error.

The verdict was returned against the defendant October 19, 1938. The following day the defendant filed a written motion for new trial, which was then argued and submitted. November 15th the motion for new trial was denied. On the last-mentioned date the defendant and his attorney appeared in court and judgment of conviction was then pronounced against him. There was no objection to the rendering of judgment for lack of jurisdiction or otherwise. No motion in arrest of judgment was made. The extension of time for passing on the motion for new trial and for pronouncing judgment was not prejudicial to the defendant.

■ It has been repeatedly held that the failure of the court to pass on a defendant's motion for new trial within the time allowed by the statute is mere error of procedure; that the court is not thereby deprived of jurisdiction to deny the motion and pronounce judgment, unless the error results in a miscarriage of justice. (*People* v. *Ramos,* 80 Cal. App. 528, 531 [251 Pac. 941] ; *People* v. *Von Moltke,* 118 Cal. App. 568, 572 [5 Pac. (2d) 917].) ■ Numerous California authorities have held that the failure of the court to pronounce judgment within the limitation of time prescribed by section 1191 of the Penal Code does not automatically entitle the defendant to a new trial under the provisions of section 1202 of the Penal Code, nor does such delay render the judgment void for lack of jurisdiction. A judgment so pronounced may not be reversed on appeal unless the delay results in a miscarriage of justice, for the reason that the

pronouncing of judgment is a mere matter of procedure which will not warrant a reversal under the provisions of article VI, section 4½, of the Constitution of California. (*People* v. *Zuvela,* 191 Cal. 223 [215 Pac. 907] ; *People* v. *Farber,* 19 Cal. App. (2d) 189 [64 Pac. (2d) 1138] ; *People* v. *Rubens,* 11 Cal. App. (2d) 576, 587 [54 Pac. 98, 1107] ; *People* v. *Stroff,* 134 Cal. App. 670 [26 Pac. (2d) 315] ; *People* v. *Miller,* 130 Cal. App. 191 [19 Pac. (2d) 814] ; *People* v. *Carter,* 130 Cal. App. 95 [19 Pac. (2d) 843] ; *People* v. *Howard,* 10 Cal. App. (2d) 258 [52 Pac. (2d) 283] ; 97 A. L. R. 805, note.)

The judgment and the order are affirmed.

Pullen, P. J., and Tuttle, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 27, 1939.