[Crim. No. 1287. Third Appellate District.—October 24, 1933.]

THE PEOPLE, Respondent, v. PETER STROFF, Appellant.

Blaine McGowan for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jone Deputy Attorney-General, for Respondent.

PLUMMER, J.—On September 4, 1928, the defendant pleaded guilty to the crime of burglary, with which he was regularly charged and sentenced to imprisonment in the state prison at San Quentin. The record shows that at the time of passing sentence the court failed to designate whether the offense to which the defendant had pleaded guilty was burglary in the first or second degree. Thereafter, and in May, 1933, after hearing upon the appellant's petition for a writ of *habeas corpus*, this court remanded the appellant to the trial court in order that the degree of the offense to which the appellant had pleaded guilty should be ascertained and determined. (*In re Stroff*, 132 Cal. App. 351 [22 Pac. (2d) 770].)

In pursuance of the order and direction of this court, the trial court of Humboldt County having brought the appellant before it, proceeded to take testimony to determine the degree of the offense to which the defendant had pleaded guilty, and thereupon found such offense to be burglary in the first degree. From this action of the trial court the defendant appeals.

Two grounds are relied upon for reversal—1st: That the trial court had no jurisdiction to proceed to determine the degree of the offense to which the defendant had pleaded guilty, by reason of the fact that a judgment determining the degree of the offense was not pronounced within five days after the defendant had entered his plea of guilty; 2d: That the defendant was not armed at the time of the commission of the offense, and therefore was guilty only of burglary in the second degree.

The record shows a burglary during the night-time, of a certain store building in the county of Humboldt, and that the defendant owned a certain pistol or revolver which was found lying on the platform just outside of one of the doors leading into the store building. Whether that pistol was left on the platform before or after the entrance is not shown by the testimony.

In support of his first contention the appellant refers to a number of cases holding that where the court has failed to pronounce judgment within five days after a plea or verdict of guilty, a new trial must be granted to the defendant as a matter of right. These cases, however, by

reason of the later decisions hereinafter referred to, can no longer be considered as authority. All of the cases cited by the appellant overlook the provisions of section 4½ of article VI of the Constitution prohibiting the granting of a new trial for any error as to a matter of procedure unless such error had led to a miscarriage of justice.

Section 1192 of the Penal Code unquestionably deals with a matter of procedure. It reads: "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree." This is but a preliminary step to be taken, in order, under the provisions of the indeterminate sentence law, to advise the proper authorities as to the term of imprisonment that may be imposed upon the defendant so pleading guilty. Imprisonment is the substantive part of the sentence. The advisory part to which we have just referred is for the direction of the board of prison terms and paroles.

While section 1202 of the Penal Code does direct that in the event sentence is not pronounced within five days the defendant "shall be entitled to a new trial", this section is not controlling in matters of procedure. Section 4½ of article VI of the Constitution must be held to limit the application of section 1202 of the Penal Code, and the contention of the appellant that this section of the code makes it mandatory upon the trial court to grant a new trial must be held as not well taken in view of the constitutional provision limiting the right to new trials when matters of procedure are involved.

That the earlier cases cited by the appellant are no longer controlling where the court fails to pronounce sentence within five days, is now clearly established. In *People* v. *Zuvela*, 191 Cal. 223 [215 Pac. 907], where sentence was not pronounced within the five days mentioned in the statute, the court held (quoting from the syllabus): "The failure to impose the sentence in a criminal case within the time specified by section 1191 of the Penal Code is an error of procedure, and section 4½ of article VI of the Constitution operates to prevent the granting of a new trial for the error." This statement of the law is supported by the following cases: *People* v. *Haines*, 64 Cal. App. 628 [222 Pac. 183]; *People* v. *Powell*, 83 Cal. App. 62 [256 Pac. 561]; *People* v. *Wilson*, 101 Cal. App. 376 [281 Pac. 700]; *People*

v. *Carter,* 130 Cal. App. 95 [19 Pac. (2d) 843]. In this latter case this court held that a new trial will not be granted because of the error in failing to pronounce sentence within five days, unless an examination of the record discloses that the error complained of resulted in a miscarriage of justice.

The rule is likewise well established that where an irregular judgment has been pronounced, the proper procedure is to remand the cause to the trial court in order that proper correction may be made. (*People* v. *O'Brien,* 122 Cal. App. 147 [9 Pac. (2d) 902, and cases cited on page 158.) See, also, *In re Stroff, supra.* To the same effect is the decision of this court in *In re Germino,* 38 Cal. App. 497 [176 Pac. 701].

█ Admitting the commission of the burglary, the appellant contends that the court was in error in finding the offense to be of the first degree, in that he was not armed with a deadly weapon. The building burglarized not being inhabited at the time, the provisions of section 460 of the Penal Code require, in order to constitute burglary of the first degree, that he must have been armed with a deadly weapon. As shown by the evidence in this case the revolver belonging to the defendant was left on the platform just outside the building. Under such circumstances it is contended that the appellant was not armed within the contemplation of the code.

A somewhat similar case was before the court in the case of *People* v. *Hall et al.,* 105 Cal. App. 359 [287 Pac. 533]. The defendants had in their possession automatic revolvers, but it appears that no use was made thereof. There it was contended, as here, that the court erred in finding the offense as of the first degree. In disposing of this contention the court used the following language: "Appellants claim that the trial court committed error in finding that they were armed with a dangerous or deadly weapon in perpetrating the offense to which they pleaded guilty. . . . This contention is based upon the claim that the weapons were not exposed to the victim at the time of the perpetration of the crime. As above stated, the evidence showed that both defendants were armed with a revolver and that in addition thereto one of them was possessed of a blackjack. Whether or not they exposed these deadly weapons in order to carry

out their criminal act is of no consequence. The fact that they had them in their possession available for immediate use is sufficient to bring the case within the statute. 'Armed' with a dangerous weapon means furnished or equipped with weapons of offense or defense.'' (Citing *State* v. *Lynch,* 88 Me. 195 [33 Atl. 978].) The definition of ''armed'' as given in 5 C. J. 285 is as follows: ''Furnished or equipped with weapons of offense or defense.''

Reference is also made in the testimony to a sawed-off shotgun, but this testimony is so indefinite that we do not base our decision thereon. There is nothing in the code provision which requires that the deadly weapon, or the weapon which may be used in offense or defense, must be held in the hand or hands of the person or persons committing the burglary. In this instance the appellant was certainly equipped with a deadly weapon. Webster defines ''equip'' and ''equipped'' as follows: ''To furnish for service or against a need of exigency; to fit out; to supply with whatever is necessary to efficient action in any way; to provide with arms or armaments, stores, munitions, etc.'' If the appellant laid his revolver down on the outside of the building it does not exclude the conclusion that he was there armed, that is, equipped with a deadly weapon or instrument ready for use in case of emergency. The mere fact that some person more skilful than the appellant might have intercepted the use of the deadly weapon does not at all controvert the conclusion that the appellant was armed, that is, equipped with the means of offense and defense. To hold, under the circumstances disclosed in this case, that the appellant was unarmed would be to give precedence to a mere shadow rather than to substance.

The judgment and order are affirmed.

Pullen, P. J., and Thompson, J., concurred.