[Crim. No. 3737. In Bank.—June 19, 1934.]

THE PEOPLE, Respondent, v. C. JACK GAINES, Appellant.

Paul E. Gehres, R. C. Pardoe and J. Thomas Russell, for Appellant.

U. S. Webb, Attorney-General, and James F. Howie, Deputy Attorney-General, for Respondent.

THE COURT.—After consideration of this appeal, we hereby adopt, as part of this decision, the following language taken from the opinion prepared by Mr. Justice York for the honorable District Court of Appeal for the Second Appellate District, Division One:

"The appellant was tried upon an indictment containing ten counts charging him with the offense of forgery, and upon two informations containing ten counts charging him with the offense of grand theft. From judgment of convictions on all counts charged in said indictment and informations and from the order of the trial court denying his motions for a new trial, appellant prosecutes this appeal.

"Defendant was charged with the theft of $9,500 in money, the personal property of Lola Carr Harman, real

property of the value of $10,000 belonging to said Lola Carr Harman, and stock of the J. C. Penney Company of the value of $92,716.25, also the property of said Lola Carr Harman. In addition, he was charged with the theft of $350 in money, the property of C. M. and Ruth Bowler. The indictment charged the forging of the name of Lola Carr Harman to ten stock transfers and assurances and letters of attorneys, and the revocable power to receive and transfer certain stock certificates of the J. C. Penney Company.

"As a defense, appellant claimed that he had formed a partnership with Mrs. Harman for the purpose of conducting and maintaining a general brokerage and real estate business and that, in pursuance of that association and relationship, appellant was to continue his already established business as a real estate broker, but on a more expanded and extensive scale due, in the main, to the fact that the said Lola Carr Harman had and did agree to furnish large sums of money to be used in the conduct of the business of making property loans, and that all profits—the result of said loans—were to be shared equally by appellant and said Lola Carr Harman. In her testimony, the said Mrs. Harman denied the existence of such relationship and charged that appellant at various times had forged her name and signature to certain documents, instruments and securities, and by reason of such forgeries, appellant secured divers sums of money and converted the same to his own personal use.

"It is contended by appellant that since he 'admitted the receipt of the money and property in question as alleged in the counts for grand theft and upon which he was being tried, and advanced no theory or defense other than his contention that he did so, not with a felonious intent, but by virtue of an agreement between himself and the said Lola Harman that the property should be used in their common business enterprise, then the paramount and vital issues of fact of the cause were: 1. Did such an agreement exist as between appellant and the said Lola Harman, and 2. Did the appellant forge the signatures to the several documents in question or did the said Lola Harman actually sign them as contended by appellant.'

"Predicated upon this theory, appellant contends that the trial court erred in refusing to grant defendant's handwriting witness sufficient time to complete his investigation of the handwriting in issue before offering his testimony—such testimony to be offered for the purpose of rebutting expert evidence which had been given by witnesses on behalf of the People in an effort to prove that forgery had been committed by appellant. Appellant also alleges error on the part of the trial court in sustaining the People's objection limiting scope of expert testimony; in refusing to give certain instructions requested by defendant, and in refusing to direct the jury to return a verdict in favor of defendant.

 "The trial of this case was begun in the superior court on October 11, 1932; on October 13, three handwriting experts testified for the prosecution, at which time certain exhibits involving both the handwriting of the defendant and the handwriting of the complaining witness were introduced in evidence. On October 20, 1932, counsel for defendant asked the court for a recess until the following morning 'so that we can have the benefit of the examination by a handwriting expert'. The court refused this request, but did grant a recess until 2 o'clock of the same day, at which time the attorney for defendant called as his witness, Milton Carlson, handwriting expert, and by his testimony sought to rebut evidence given by handwriting experts, who had previously testified in favor of the prosecution. Since the testimony which appellant sought to rebut was given on October 13, 1932, we are of the opinion that sufficient time intervened between that date and October 20th, the date upon which Mr. Carlson was called, within which he could have made an examination of the exhibits referred to, and that no error was committed by the trial judge in refusing to grant a recess until the next day.

" ' "It is a settled rule of practice that an application for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be reviewed except for the most cogent reasons. The trial court is apprised of all the circumstances of the case and the previous proceedings, and is, therefore, better able to decide upon the propriety of granting the application than an appellate

**114**

court; and when it exercises a reasonable and not an arbitrary discretion, its action will not be disturbed." (5 Cal. Jur. 968.)' (*People* v. *Collins*, 195 Cal. 325, pp. 332, 333 [233 Pac. 97, 100].) There is nothing in the record that suggests the exercise of an arbitrary discretion of the trial court in refusing to grant the recess here referred to."

■ This brings us to the further contention that the trial court erred in limiting the scope of expert testimony. The said handwriting expert, when asked if he had come to any conclusion regarding the questioned documents, particularly as to whether or not they had been written by defendant or by Mrs. Harman, answered that because of lack of sufficient time within which to make a proper examination of the several exemplars of handwriting, he could not express "a definite conclusion". A further question as to whether or not he had come to any conclusion with regard to the characteristics of the handwriting of either party was answered in the affirmative. Thereupon he was asked by counsel for the defendant to point out to the jury the various characteristics in the respective handwritings which would indicate, or would not indicate, that Mrs. Harman may have been the author thereof. This was objected to by the prosecution on the ground that the witness had already stated he had not come to any conclusion about any questioned documents in the case, which objection was sustained by the court. Thereafter the court persistently refused to permit the witness to answer similar questions along the same line of examination by counsel for defendant in an attempt to have him indicate some of the "various characteristics" in the handwriting of Mrs. Harman, thereby introducing evidence directed toward establishing a reasonable doubt as to defendant's guilt. The following is an illustration of the type of question referred to: "Q. By Mr. Bird: I will call your attention to the capital letter 'L' in the various questioned documents and more particularly to the little upstroke at the end of the 'L', which I will illustrate on the blackboard, right there at the end (indicating), a kind of an upstroke at the end of the capital 'L', and ask you if in examining any of the exhibits offered here as exemplars of Mrs. Lola Harman's handwriting you found that she ever formed capital 'L's' in that form or

with that characteristic?'' In sustaining further objections to questions such as the one just quoted, the court said: ''A witness is entitled, under the exception of the rule to express his opinion. It is not a proper function of an expert to come here and point out a lot of similarities, and dissimilarities, without expressing an opinion. Anyone can do that. Objection sustained.''

The trial court apparently based this ruling upon the theory that unless an expert witness first expresses an opinion with reference to the ultimate fact at issue, he may not testify to any facts within his knowledge as an expert which might determine said ultimate fact. Such is not the law.

Section 1944 of the Code of Civil Procedure provides: ''Evidence respecting the handwriting may also be given by a comparison, made by the witness or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered, or proved to be genuine to the satisfaction of the judge.'' There is nothing in this statute to indicate that before a ''comparison'' may be made, it is necessary that a witness express an opinion regarding the result of such comparison. An expert witness in some instances may state his final conclusion regarding a fact at issue; in others he may testify solely as to the several facts upon which a final conclusion could be predicated, or he may testify in both respects; often he expresses his opinion through the medium of the ''hypothetical question''. In other words, the foundational facts are distinct from the ultimate fact at issue and they may be established by the testimony of either lay or expert witnesses. (See 10 R. C. L., p. 994; 11 R. C. L., pp. 573, 590; 10 Cal. Jur., p. 960; Rogers on Expert Testimony, p. 303, citing *Riordan* v. *Guggerty*, 74 Iowa, 688 [39 N. W. 107].)

It follows that here the trial court erred in limiting the scope of examination of said expert witness in the manner aforesaid. The question is: was the error prejudicial? We think not. The predominating characteristics of the handwriting of these signatures are plainly visible. Comparison of them could have been made as well by the jury as by the expert witness. Inasmuch as the latter had reached no definite conclusion in the matter, his testimony would probably have been largely cumulative and of no

substantial value. Furthermore, there is no doubt of defendant's guilt. We have examined the entire record with care and, indeed, the trial court was justified in declaring when about to pronounce judgment: "I am constrained to say in your case that it was an exceedingly flagrant and aggravated one, and I am in entire accord with the verdict of the jury." Under the particular circumstances of this case, the admission or rejection of the testimony in question could not have affected the final result reached by the jury; hence our conclusion that said error affords no basis for reversal of the judgments, or any of them, and that defendant suffered no prejudice.

We find no merit in appellant's contentions that the court erred in refusing to give to the jury certain instructions requested by him and in refusing to direct the jury to return a verdict in his favor. So far as appears, the instructions given by the court to the jury covered the same subjects, and covered them correctly.

The judgments of conviction and the orders denying motion for new trial are affirmed.