[Crim. No. 828.   Fourth Dist.   Apr. 13, 1951.]

THE PEOPLE, Respondent, v. ROBERT GARTH GUTHRIE, Appellant.

Allen L. Martin for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—A jury found the defendant guilty of assault with a deadly weapon with intent to commit murder and he appeals from the judgment thereafter pronounced and the denial of his motion for a new trial.

On the morning of June 23, 1950, at about 11 o'clock, the defendant and his wife entered a restaurant known as "Drake's Café" in Terra Bella. Neal Drake (the proprietor of the café), Carl Trigg (the victim of the assault in the instant case) defendant and his wife all drank from a bottle of whiskey furnished by the defendant. The defendant induced Drake and Trigg to go with him to visit his home in the rural part of Tulare County. Shortly thereafter the three men and the defendant's wife left in defendant's station wagon, and with Trigg at the wheel, drove to the city of Porterville, where they stopped at another café and where more drinks were ordered and consumed. They then went to a liquor store in Porterville and bought a fifth of whiskey, and proceeded to Guthrie's house. Upon arrival, Mrs. Guthrie went in the downstairs bedroom to lie down and the three men went into the living room. Defendant turned on the radio and when he sat down, "bumped" into Trigg. Trigg "bumped" him back and said "Why you little squirt." The defendant then said "You hurt my arm. You are a lots stronger than me but I have got a gun." Drake then went out of the room and was asleep in another part of the house when the shooting took place.

Trigg testified that after Drake left the room, the defendant got up, started across the room and stated that he was going to get a drink; that he, Trigg, went over to the radio to turn it on and then walked over to the mantel where the whiskey was; that while he was standing there reaching for the bottle, he heard the defendant say "You son of a bitch, I am going to kill you"; that he wheeled around and saw the defendant standing there pointing a gun at him and at this time the defendant shot him twice.

The defendant testified that immediately preceding the

shooting, Trigg started moving out of the room and he asked Trigg where he was going; that Trigg said he was going to see Mrs. Guthrie; that the defendant said ''Please don't disturb her'' and Trigg replied ''I will go any damn place I please''; that the defendant got up from the radio, faced Trigg and said ''Over my dead body''; that they started scuffling and that Trigg threw him on the floor and held him a while and that he (the defendant) got up, went upstairs and there got the revolver; that he then started down the stairway and said ''Get away from the door''; that when nearly to the foot of the stairway, he shot his gun in the general direction of Trigg; that Trigg was standing facing him with his arms outspread at the time; that the first shot didn't seem to move Trigg, so he shot him again.

When Drake returned to the room after hearing the shots, Trigg said ''Bob shot me.'' The defendant replied ''You damn right I shot him. He was roughing me up and hurt my arm.'' Drake then called the sheriff's office. Captain Anderson of that office testified that when he arrived at the scene of the shooting, the defendant said that he had shot Trigg; that he had ''done wrong, knew that he did and should not have done it.''

A physician testified that Trigg suffered two bullet wounds; that when treated, he was suffering from shock and that without medical treatment, he would have died; that one lead slug was recovered from the body and was lodged below the right shoulder blade; that the other bullet went through the body and came out above the thigh bone.

Defendant does not question the sufficiency of the evidence to sustain the judgment but contends that his substantial rights were prejudiced by the admission of certain testimony relating to an incident involving the defendant and one I. C. Young. This incident occurred about nine months prior to the date of the offense herein charged and the testimony regarding it was to the effect that the defendant, while intoxicated, threatened to kill Young with a gun of the same make and caliber as that used in the instant case. This testimony was admitted for a limited purpose and the trial court gave the following instruction concerning it:

''Evidence is offered in this case for the purpose of showing that at a time prior to that alleged in the Amended Information, the defendant, following an altercation with Ike Young, went and got a gun and stated he was going to kill Ike Young.

"Such evidence will be received for a limited purpose only: Not to prove distinct offenses or continual criminality, but for such bearing if any, as it might have, on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

"The value, if any, of such evidence depends on whether or not it tends to identify the defendant as the perpetrator of the offense of which he is now accused by the Amended Information, and for which he is on trial in this action, namely, Assault with a deadly weapon with intent to commit murder as to Carl Trigg."

Under the circumstances shown by the record we see no prejudicial error in the admission of the testimony to which objection was made. ▮ Evidence of other acts of a similar nature may be admitted, when not too remote, to prove a material fact or where they tend to show motive, scheme, plan or system (*People* v. *Henderson,* 79 Cal.App.2d 94, 119 [179 P.2d 406]), and such similar acts may be either before or after the perpetration of the crime charged. (*People* v. *Weir,* 30 Cal.App. 766, 767 [159 P. 442].)

As was said in *People* v. *Dabb,* 32 Cal.2d 491, 499 [197 P.2d 1]:

"Evidence which is relevant in establishing guilt of the crime charged is admissible notwithstanding the fact that it tends to connect the accused with an offense not included in the charge. (*People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924]; *People* v. *McMonigle,* 29 Cal.2d 730, 741 [177 P.2d 745].) As stated in *People* v. *Peete, supra,* at page 315, quoting from *People* v. *Walters,* 98 Cal. 138, 141 [32 P. 864], 'Whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion.'

"The general test of relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. If it does, then the evidence is admissible whether or not it embraces the commission of another offense and whether the other crime

be similar or dissimilar. (*People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924].) ''

Evidence of an independent and separate crime, while inadmissible to prove the guilt of one on trial for a criminal offense, is admissible where such evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation. (1 Wharton, Criminal Evidence, § 348, p. 507; see annotation: 63 A.L.R. 602.)

The trial court should, however, by proper instructions, limit the consideration of such evidence to the purposes for which it is received. (*People* v. *James,* 40 Cal.App.2d 740, 746 [105 P.2d 947].)

Evidence of the ''Young'' incident should have been excluded. Without such testimony there was an abundance of proof of the identity of the defendant as the perpetrator of the offense charged. However, in view of the overwhelming evidence of the defendant's guilt, including his own testimony, the evidence covering the ''Young'' incident and the instruction given concerning it, obviously did not affect the verdict of the jury. The errors complained of did not result in a miscarriage of justice.

Judgment and order affirmed.

Barnard, P. J., and Griffin, J., concurred.