[Crim. No. 3201. First Dist., Div. Two. July 23, 1956.]

THE PEOPLE, Respondent, v. EUGENE F. MOORE et al.,
Appellants.

Emmet F. Hagerty for Appellant Moore and Kenneth C. Zwerin, under appointment by the District Court of Appeal, for Appellant Hill.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Irving Reichert, Assistant District Attorney, for Respondent.

THE COURT.—Appellants were found guilty by a jury on both counts of an information (No. 51442) accusing them of 1, burglary armed with a deadly weapon (first degree, Pen. Code, §§ 459-460), and 2, conspiracy (Pen. Code, § 182) to commit burglary with an acetylene torch or explosives (Pen. Code, § 464) and charging appellant Hill with a prior felony conviction, which was admitted. Moreover, each was found guilty on an information (Nos. 51441 and 51443) accusing him of possession of a firearm capable of being concealed on the person after having been convicted of a felony (Pen. Code, § 12021). Their motions for a new trial were denied and they were sentenced to San Quentin, the sentences to run consecutively. They appeal from the judgment and the order denying their motions for new trial.

Their first contention is that the evidence is insufficient to justify the conviction of first degree burglary and of possession of a concealable firearm, because there was allegedly no evidence that they possessed the pistol found on the burglarized premises, and the conviction of conspiracy, because there was allegedly no evidence to substantiate the only overt act charged, to wit that appellants "placed upon the floor within the premises . . . acetylene tanks and . . . other tools." The contention of insufficiency of the evidence, not seriously maintained in the closing brief, is wholly without merit. Appellants do not deny that the evidence was sufficient to justify conviction of second degree burglary. They themselves testified to conspiring to burglarize the place, (allegedly with a third party with no other name than Joe) and that they passed into the store burglarized a large suitcase with acetylene torch, etc. They were arrested in the place itself and the police officers found on the floor there a .45 automatic in a towel underneath gauges, in the same suitcase which contained two acetylene torches. The clip with shells was in the gun. ■ To be armed with a deadly weapon under section 460 of the Penal Code it is sufficient that appellants had it in their possession available for immediate use. (*People* v. *Stroff,* 134 Cal.App. 670, 674 [26 P.2d 315].) The jury could find that the pistol was in the joint possession of both and that in the suitcase it was available for immediate use. ■ The same applies to the possession, custody or control of the weapon under section 12021 of the Penal Code. In *People* v. *Welch,* 89 Cal.App. 18, 29 [264 P. 324] it was held that two loaded revolvers which were in an automobile used by three defendants conspirators on a burglary

trip with one of which revolvers one of the defendants shot it out with the police, were also in the possession, custody and control of the two defendants who were arrested in the automobile but who did not shoot. Here both defendants carried the pistol with them into the burglarized store in a suitcase which they there opened. There is no doubt that they both could be held to have had detention and control of the weapon. The contention that the alleged overt act was not proved, although defendants themselves testified that they conspired to burglarize the store and brought into the store the suitcase with the acetylene torches which the police found there on the floor, does not require any comment.

Next appellants complain of the fact that an ex parte motion made on August 3, 1955, to continue the trial scheduled for August 8th on the ground that the defendants had been in custody in Stockton for two weeks prior to the motion was denied. ▆ Our law requires both a speedy trial, not to be postponed without proof of necessity in the interest of justice (Pen. Code, § 1050) and a reasonable opportunity for the attorney of the accused to prepare for trial. (*In re Ochse*, 38 Cal.2d 230 [238 P.2d 561].) ▆ The decision of the motion on the basis of these two principles and the special facts of the case is in the discretion of the trial court and the appellate court will only disturb its ruling for the most cogent reasons. (*People* v. *Gaines*, 1 Cal.2d 110, 113 [34 P.2d 146].) We cannot say that there were here most cogent reasons for continuance or any detriment to appellants' defense by the denial. The attorneys who made the motion on August 3, 1955, had already assisted appellants at their arraignment on June 22, 1955, and the briefs on appeal do not state any matter in which the efficacy of the defense was hampered by lack of preparation. The evidence indicates that no long preparation for the trial was needed.

▆ Appellants predicate misconduct of the district attorney on the fact that he cross-examined appellant Hill about prior arrests of which it did not appear that they related to felonies. Defendant Hill opened up the matter of the prior arrests, when, testifying in his own behalf, he testified as to prior difficulties he had had with members of the San Francisco Police Department, particularly with two inspectors present as witnesses in the case, against whom he brought a damage suit (for false arrest). On cross-examination prior to the questions complained of, defendant Hill referred to the time that one of these inspectors "falsely arrested" him. This evidence

was clearly intended to undermine the confidence of the jury in the impartiality of those police officers as to defendants and in the value of their testimony. The district attorney was then entitled to cross-examine defendants as to these arrests and all circumstances which could be of importance for the evaluation of the attitude of the officers in making the arrests. ■ From a defendant in a criminal matter who has testified in his own behalf any matter may be elicited on cross-examination, which may tend to overcome or qualify the effect of the testimony given by him on his direct examination. (*People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223].) If the questions were relevant for that purpose then the evidence was admissible, ''whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not'' (*People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924] ; *People* v. *Hughes,* 123 Cal.App.2d 767, 769 [267 P.2d 376] ). For the right to rebut an implied attack by defendant on the credibility of police officers see *People* v. *Clark,* 122 Cal.App.2d 342, 348 [265 P.2d 43].

■ At any rate the attitude of defendants in the court below prevents review on appeal on this ground. After most of the questions here complained of had been asked, defendant Hill's attorney for the first time assigned misconduct and asked that the jury would be admonished to disregard. The court sustained the objection and so admonished the jury. It is not contended that the admonition could not cure the error. No mistrial was asked. Appellants got all they asked for. (*Jonte* v. *Key System,* 89 Cal.App.2d 654, 659 [201 P.2d 562] ; *Ades* v. *Brush,* 66 Cal.App.2d 436, 445 [152 P.2d 519].) Thereafter only one question was asked here complained of, to wit whether defendant Hill had been arrested for driving with a suspended or revoked driver's license. The objection led to a discussion between counsel and the question remained unanswered without a ruling by the court. No misconduct was assigned or admonition asked. ■ The failure to obtain a ruling prevents review of the objection on appeal (3 Cal.Jur.2d 610 and authorities there cited). ■ But even if this were not so the evidence of defendants' guilt including their own testimony is so overwhelming that any possible error in mentioning the other arrests cannot have caused a miscarriage of justice and therefore cannot lead to reversal (Cal. Const., art. VI, § 4½ ; *People* v. *Hughes, supra,* 123 Cal.App.2d at p. 769 ; *People* v. *Guthrie,* 103 Cal. App.2d 468, 472 [229 P.2d 841] ).

Appellants' contention of misconduct of the court consisting in the court's remark to defendant Hill: "I don't believe that" is frivolous when the circumstances of the remark are considered. Mr. Hill's counsel addressed his client, who was testifying, by mistake as Mr. Moore. The court corrected him. Counsel said that he was sorry, he was confused. Defendant Hill then said: "No wonder he's confused. I haven't paid him yet." On this remark, which evidently was a joke, the court in the same spirit said: "I don't believe that." Nevertheless at the request of counsel the court instructed the jury to disregard the statement, which he said was just a repartee. Evidently the admonition, which was all that was asked, must be considered to have cured any possible error and there is no possibility whatever of prejudice, certainly not if the strength of the case against the defendants is considered.

Appellants contend that certain language used by the court when the jury requested additional instructions was intemperate and prejudicially erroneous. The jury had not sufficiently understood the several offenses of which defendants were accused and the code sections which governed said offenses. The court therefore explained these points in popular language. It was explained that the first count of the information against both defendants related to burglary (§ 459), that defendants admitted burglary but that the disputed question was whether the burglary was of the first or second degree depending on whether they were armed with a pistol at the time of the burglary; that was joined with a second count charging conspiracy (§ 182); that a conspiracy must be to do something and that they were accused of conspiracy to commit burglary with explosives (§ 464), which requires entering the place with the intent to attempt to open or to open a safe and to use acetylene torches or explosives; that the People say that they had an agreement, conspiracy, between them to go in there and do these things. *"They say we had an agreement sure, but it was just to go in and burglarize the place,* not as the people charge." It was for the jury to determine whether they had the conspiracy and did the overt act as charged by the People. After a further question of a juror the court repeated that the fact that defendants admitted that they conspired to burglarize the place was not sufficient to find them guilty because they were charged with a specific conspiracy, conspiracy to burglarize with explosives. They say, " *'Sure, we got together. We*

*cased this joint. We did everything but we didn't go beyond that.' It is up to you to decide whether or not you are going to believe that or whether you are going to take the position that the State maintains.''* Appellants complain of the emphasized language as giving the jury the impression that appellants were burglars. As they had expressly admitted burglarizing the place such could hardly be objectionable. There might be a question whether the above statement of the position of the parties, factually correct, did not in its tone somewhat favor the prosecution, but, as said before, the case was so clear that this cannot have caused a miscarriage of justice. The court took care to eliminate any possibility that the jury would construe the above language as giving them the right to decide on mere belief by instructing them again ''that it is the duty of the State to prove these men guilty beyond a reasonable doubt.''

Appellants complain of the refusal of three instructions offered by them as to possession of a weapon and burglary armed with a deadly weapon. The subject matter of these instructions was fully and correctly covered by other instructions given. Hence the refusal of the instructions offered was no error (*People* v. *Eggers,* 30 Cal.2d 676, 688 [185 P.2d 1]).

Appellants urge that the convictions of and punishment for three separate offenses in this case violate section 654 of the Penal Code which prohibits punishing under more than one penal provision if the same act is made punishable in different ways by different provisions of the code. In this respect conviction and punishment must be distinguished.

''Section 654 prohibits double punishment for the commission of a single act (citations), but it does not prohibit convictions for different offenses arising out of a single act unless one is necessarily included within the other (citations).'' (*People* v. *Smith,* 36 Cal.2d 444, 448 [224 P.2d 719].) There is no doubt that here no included offenses were involved and that the separate convictions were correct.

''It has long been settled that a conspiracy is a distinct offense from the actual commission of the offense forming the object of the conspiracy and that guilty parties may be legally convicted of both offenses'' (*People* v. *Campbell,* 132 Cal. App.2d 262, 268 [281 P.2d 912]; *People* v. *Hoyt,* 20 Cal.2d 306, 317 [125 P.2d 29]). It has also been held that armed robbery and possession of a concealable firearm by a felon were two distinct offenses; the conviction of both of

which was upheld. (*People* v. *Israel,* 91 Cal.App.2d 773, 779 [206 P.2d 62] ; *cf. People* v. *Warren,* 16 Cal.2d 103, 110-111 [104 P.2d 1024].) The same must apply in this case. [16a] The question remains whether it was in accordance with the legislative intent expressed in section 654, *supra,* that in a situation like that here present, the sentences were made to run consecutively (*People* v. *Kynette,* 15 Cal.2d 731, 762 [104 P.2d 794]). In that respect the question is not whether appellants were guilty of distinct *offenses* but whether these offenses were committed by the same or by distinct acts. (*People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1].) ██ "The applicability of section 654 depends upon whether a separate and distinct act can be established as the basis of each conviction (citation). . . . It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished (citations)." (*In re Chapman,* 43 Cal.2d 385, 389-390 [273 P.2d 817].) The unlawful agreement, which is the gist of the conspiracy, to commit burglary with explosives, is an act separate and distinct from the armed burglary, the essence of which is the armed entry with felonious intent. It may be noted, without deciding the importance of the point, that the overt act alleged, the placing of the suitcase with acetylene tools on the floor of the burglarized premises is not essential to the armed burglary. It has expressly been held that separate punishment for the conspiracy and the act to which it relates is not forbidden by section 654, *supra* (*People* v. *Severino,* 122 Cal.App.2d 172, 184 [264 P.2d 656]). For an example of consecutive sentences for the crime and the conspiracy to commit the same see *People* v. *Gem Hang,* 131 Cal. App.2d 69 [280 P.2d 28]. There might be some more doubt whether the possession of a concealable weapon by defendants (felons) and the burglary armed with a deadly weapon have as their basis distinct acts, because there was no evidence of the possession of the pistol except its presence among the tools of defendants in the burglarized store. However, in *People* v. *Warren, supra,* 16 Cal.2d at page 111 it is said as basis for the court's decision as to double jeopardy : "In *People* v. *Perry,* 99 Cal.App. 90, at 93 [277 P. 1080], it was held that the crime of carrying a concealed weapon in violation of the Firearms Act (Stats. 1923, p. 695) is separate and distinct from the crime of robbery, and defendant was subject to separate indictment, conviction *and punishment* for carrying a concealed weapon, irrespective of the result of

the robbery prosecution, and notwithstanding that both crimes may have grown out of the same continuous transaction and were committed at the same time." It is moreover said in the Warren case (at p. 110): ". . . the offense which is prohibited by section 2 of the Deadly Weapons Act, i.e., possession or control of a firearm by persons who had been previously convicted of crime, was complete before the robbery took place for the reason that without possession of the deadly weapons which were used in the perpetration of the robbery, that crime could not have been consummated." Although *People* v. *Warren* and *People* v. *Perry* do not directly involve section 654, *supra*, they indicate that the necessary possession prior to the entry can be considered a distinct act, which may be separately punished. The possession after the entry could also be considered as a separate act because the burglary was completed by the entry with felonious intent alone (see *People* v. *Shaffer*, 81 Cal.App. 752, 754-755 [254 P. 666]). Appellants rely on *People* v. *Roberts*, 40 Cal.2d 483, 491 [254 P.2d 501] which held that for transportation, furnishing and possession of heroin (all prohibited by section 11500 and made punishable by section 11712 of the Health and Safety Code) if committed at the same time one punishment only can be inflicted and on the rule there stated that "cooperative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted." However, in this case different offenses made punishable by different code sections are charged in separate informations, and the above rule has no application. In each case the court must decide on the basis of its particular facts and the legislative intent whether there are one or more distinct acts and whether one or more punishments can be inflicted. (*People* v. *Logan*, 41 Cal.2d 279, 290 [260 P.2d 20].) We hold that under the facts of this case more than one punishment was legal. We then cannot review the discretion of the trial court in making the sentences run consecutively or concurrently. (*People* v. *Kynette*, *supra*, 15 Cal.2d 731, 762; *People* v. *Schafer*, 161 Cal. 573, 580 [119 P. 920].)

Judgment and order affirmed.

The petition of appellant Ralph Hill, Jr., for a hearing by the Supreme Court was denied August 21, 1956.