[No. F015051. Fifth Dist. Feb. 25, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DARRELL WILLIAMS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the Facts, and parts I and III of the Discussion.

**COUNSEL**

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Repondent.

OPINION

**THAXTER, J.**—Appellant Robert Darrell Williams, Jr., was found guilty, after jury trial, on one count of driving under the influence of alcohol within seven years of at least three separate prior driving under the influence (DUI) offenses (Veh. Code, §§ 23152, 23175). The jury found that allegations of three such prior convictions (Veh. Code, § 23165), occurring in 1984, 1985 and 1989, were true. In addition, the jury expressly found that appellant refused a peace officer's request to submit to, or willfully failed to complete, a chemical test, a violation of Vehicle Code section 23159, subdivision (a)(5).[1]

Prior to trial, the court ruled on various motions *in limine*. One set of rulings thwarted appellant's efforts to keep the fact of his prior DUI convictions from the jury. Defense counsel stated that appellant was willing to admit all his prior convictions so the jury would not think he was contesting them. The People refused the offer, and the court refused to force a stipulation on the People.

In another pretrial ruling the court denied appellant's motion to exclude evidence regarding the "nystagmus" test (see *infra*).

Appellant was sentenced to the upper term of three years. His driving privileges were ordered revoked for four years.[2]

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I. *Refusing appellant's offer to stipulate to his prior convictions so that they would not be presented to the jury was reversible error.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Evidence of horizontal gaze nystagmus test results was improperly admitted.*

Although we have determined in the unpublished portion of this opinion that the conviction on count 1 must be reversed, we are left with an

[1]Three other counts were charged; appellant subsequently pleaded no contest to those counts and they are not a subject of the instant appeal.

[2]Sentences on the three counts to which appellant pleaded no contest were run concurrently.

*See footnote, *ante*, page 1326.

evidentiary issue likely to arise in the event appellant is retried: Was evidence regarding a horizontal gaze nystagmus (HGN) test properly admitted?

"Nystagmus is an involuntary rapid movement of the eyeball, which may be horizontal, vertical, or rotatory. (The Sloane-Dorland Ann. Medical-Legal Dict. (1987) p. 504.) An inability of the eyes to maintain visual fixation as they are turned from side to side (in other words, jerking or bouncing) is known as horizontal gaze nystagmus, or HGN. (*State* v. *Murphy* (Iowa 1990) 451 N.W.2d 154, 156.) Some investigators believe alcohol intoxication increases the frequency and amplitude of HGN and causes HGN to occur at a smaller angle of deviation from the forward direction. (See *State* v. *Bresson* (1990) 51 Ohio St.3d 123 [554 N.E.2d 1330, 1332-1333].)" (*People* v. *Ojeda* (1990) 225 Cal.App.3d 404, 406 [275 Cal.Rptr. 472].)

At the beginning of trial appellant moved for an order excluding evidence of nystagmus unless the prosecutor first established a proper foundation outside the jury's presence. He cited *People* v. *Brown* (1985) 40 Cal.3d 512 [220 Cal.Rptr. 637, 709 P.2d 440], *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240], and *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013. The court conducted a hearing outside the jury's presence pursuant to Evidence Code section 402, subdivision (b) before ruling on the motion.

Officer Jose Vega, the arresting officer, testified that he had been a state traffic officer for three years ten months, before which he attended the California Highway Patrol Academy for five months. While at the academy, Vega devoted 10 hours of classroom time and 1 eight-hour lab to learning about nystagmus. The instruction was given by a sergeant, whose qualifications were unknown to Vega. The lab work consisted of conducting individual nystagmus tests on a person who had consumed alcohol. Since becoming an officer, Vega gave the test, as part of his standard field sobriety test, in some 250 instances. In less than half of those cases he determined that the subject was not under the influence based in part on the nystagmus test. In cases in which he noted nystagmus and arrested the subject for driving under the influence, the results he obtained in the field were confirmed by subsequent blood, urine, or breath tests.

Vega had no education in chemistry, physiology, or any subject showing how alcohol might affect the human body. He had not read any treatises or other documents concerning nystagmus except for some handouts provided at the academy. He had no understanding of how nystagmus occurs after ingestion of alcohol, but he had some experiences in which nystagmus resulted from other causes such as head injuries, illness, or medication.

The prosecution also called Dan DeFraga, who supervises the forensic alcohol analysis and drug section of the Kern County regional crime lab. DeFraga described nystagmus as an observable physiological effect that might be brought on by the presence of alcohol in the subject's system. He stated that the exact mechanism by which alcohol might produce nystagmus is unknown.

DeFraga acknowledged that factors other than alcohol impairment may cause nystagmus. He conceded that fatigue may be a factor, though "not to a significant degree." He admitted that circadian rhythm, that is, changes occurring in the body during the late night, has appeared in "the literature" as being a factor in nystagmus and remains under study. He also indicated that antihistamines may cause nystagmus. He did not know whether other noncontrolled substances such as caffeine or nicotine might cause nystagmus but conceded it to be a possibility. He agreed that because several factors might cause nystagmus, the test might produce both "false positives" and "false negatives."

DeFraga further acknowledged that various experts in the field disagree on the accuracy and reliability of the HGN test for identifying alcohol impairment. In fact, "there are not that many scientists around that have experienced or have done research in relation to nystagmus to alcohol impairment."

DeFraga said the test was developed in the early 1970's and is one of a battery of three field sobriety tests which, if the subject scores in a certain way, shows probable cause to believe the subject has a blood-alcohol concentration above 0.10 percent.

DeFraga described the nystagmus test for impairment: "The test is simple. A subject that is going to be looked at would be asked to look at a particular object in front of his or her face, would be required to follow that object while they're stationary, and while they followed that object with their eyes only. The movement of the eyes, the nystagmus bounce or jerking of the eyes is then detected or not detected as the eyes move from one side or the other."

DeFraga indicated that the focal object should be positioned 12 to 15 inches in front of the subject's face, elevated somewhat above eye level. The focal object is then moved side to side, the subject following its movement with the eyes only. The tester looks for a characteristic bounce or jerk as the eyes track sideways. The test is administered twice, the focal object moving

10 degrees per second during the first test, 20 degrees per second the second time. Movement faster than 30 degrees per second renders the test ineffective. When there is some oscillation or jerking of the eye, movement of the focal object should be stopped to determine the angle of onset.

As the Evidence Code section 402 hearing concluded, the court ruled that the HGN test had not been shown to be sufficiently reliable to support an opinion of a specific, numerical blood-alcohol level. The court further ruled, however, that Officer Vega could give an opinion that appellant had consumed alcohol, based on all of Vega's observations, including administration of the HGN test. For that limited purpose the court concluded Vega was offering lay, rather than expert, opinion.

Appellant contends the court erred. Because the issue is likely to arise at retrial, we will now address it.

A. *Vega's testimony was not admissible as lay opinion.*

 In its ruling below, the trial court characterized Vega's opinion on the state of appellant's intoxication as lay, not expert, opinion. To the extent the opinion was based on administration of the HGN test, we disagree.

 One of the fundamental theories of the law of evidence is that witnesses must ordinarily testify to facts, not opinions. (1 Witkin, Cal. Evidence (3d ed. 1986) § 447, p. 421.) An exception exists for expert witnesses. (Evid. Code, § 801.) In addition, nonexperts are allowed to state opinions in limited situations. (Evid. Code, § 800.) "Lay opinion testimony is admissible where no particular scientific knowledge is required, or as 'a matter of practical necessity when the matters . . . observed are too complex or too subtle to enable [the witness] accurately to convey them to court or jury in any other manner.' [Citations.]" (*People* v. *Williams* (1988) 44 Cal.3d 883, 915 [245 Cal.Rptr. 336, 751 P.2d 395].)

 Lay witnesses have been permitted to give an opinion of another's state of intoxication when based on the witness's personal observations of such commonly recognizable signs as an odor of alcohol, slurring of speech, unsteadiness, and the like. (See, e.g., *People* v. *Garcia* (1972) 27 Cal.App.3d 639, 643 [104 Cal.Rptr. 69]; *In re Joseph G.* (1970) 7 Cal.App.3d 695, 703 [87 Cal.Rptr. 25]; *People* v. *Ravey* (1954) 122 Cal.App.2d 699, 703 [265 P.2d 154].) If Vega's opinion that appellant was under the influence of alcohol was based solely on such matters, it would be admissible as lay opinion. Here, however, Vega's opinion was based in some part on his administration

of HGN testing and his interpretation of appellant's response to the testing stimulus. He drew a conclusion from the testing only because of his knowledge, training, and experience which was clearly beyond common experience. Matters beyond common experience are not proper subjects of lay opinion testimony. (See *People* v. *Allen* (1976) 65 Cal.App.3d 426, 436 [135 Cal.Rptr. 276].) "The HGN test is a different type of test from balancing on one leg or walking a straight line because it rests almost entirely upon an assertion of scientific legitimacy rather than a basis of common knowledge. Different rules therefore apply to determine its admissibility." (*State* v. *Superior Court* (1986) 149 Ariz. 269 [718 P.2d 171, 178, 60 A.L.R.4th 1103].)

In *People* v. *Ojeda, supra,* 225 Cal.App.3d 404, the only case cited by respondent for support of the lower court's ruling, the court expressly noted that the officer who gave an opinion of the defendant's intoxication based partly on HGN testing was "in effect . . . an expert on HGN as an indicator of the influence of alcohol." (*Id.* at p. 408.) The officer's expertise was based on his own special experience, which is one of the statutory qualifications. The opinion was admissible precisely because it was so " 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (Evid. Code, § 801, subd. (a).)" (*Ibid.*)

We cannot agree with the trial court's conclusion that Vega's opinion testimony was, to the extent it relied on the HGN testing, lay opinion. We next consider whether Vega was properly qualified as an expert to render the opinion he gave.

B. *Vega was not qualified to give an expert opinion that appellant's nystagmus was caused by alcohol consumption.*

Evidence Code section 720, subdivision (a) provides that "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert *on the subject to which his testimony relates.*" (Italics added.) Once qualified, an expert may give an opinion only if the opinion is "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion *upon the subject to which his testimony relates* . . . ." (Evid. Code, § 801, subd. (b), italics added.)

We will assume Vega's training and experience qualified him as an expert to administer the nystagmus test and observe signs of nystagmus.

Being qualified to attribute the observed eye movements to a particular cause, however, is a far different matter. It is not unusual that a person may be qualified as an expert on one subject and yet be unqualified to render an opinion on matters beyond the scope of that subject. (See *People* v. *Hogan* (1982) 31 Cal.3d 815, 851-853 [183 Cal.Rptr. 817, 647 P.2d 93] [criminalist qualified to give opinion on source of various bloodstains may not testify that stains were "splatters" rather than caused by contact]; *Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 700-701 [106 Cal.Rptr. 1, 505 P.2d 193] [mechanical engineer familiar with characteristics of flooding in hillside areas not allowed to give opinion on whether reasonable construction practices of builders required use of retaining wall].) Even a treating physician may not be qualified to give an opinion on esoteric causation issues in a specialized area. (*Salasguevara* v. *Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 386 [271 Cal.Rptr. 780].)

Vega's opinion that appellant was under the influence of alcohol, to the extent it was based on the nystagmus test, rests on scientific premises well beyond his knowledge, training, or education. Without some understanding of the processes by which alcohol ingestion produces nystagmus, how strong the correlation is, how other possible causes might be masked, what margin of error has been shown in statistical surveys, and a host of other relevant factors, Vega's opinion on causation, notwithstanding his ability to recognize the symptom, was unfounded. It should have been excluded.

Respondent relies on *People* v. *Ojeda, supra,* 225 Cal.App.3d 404. There a divided court held a police officer who administered a field HGN test was properly allowed to give his opinion that the defendant was under the influence of alcohol. The officer had received approximately 13 hours' training in administering and interpreting the nystagmus test and administers it every time he suspects a pedestrian or driver to be under the influence. He frequently observed the nystagmus phenomenon in people known to be under the influence of alcohol.

We respectfully disagree with the *Ojeda* majority. We believe the concurring opinion of Justice Haning is correct in concluding that the untrained officer was not qualified to render a scientific opinion on the relationship of alcohol ingestion and HGN. (225 Cal.App.3d at pp. 410-411.)

Vega's testimony concerning how he gave the HGN test to appellant and what he observed during the test may be admissible if it is linked to testimony of a qualified expert who can give a meaningful explanation of the test results to the jury. Without some connection to qualified expert testimony, however, Vega's description of the test and his observations of

nystagmus are irrelevant. On retrial that evidence should be excluded unless offered as foundation for an expert's testimony.

### C. *DeFraga's testimony was not sufficiently factual to assist the jury as to the cause of appellant's nystagmus.*

While expert witnesses usually give opinion testimony, there is no requirement that they do so. Without expressing his own conclusion, an expert may testify solely as to factual matters upon which an opinion might be based. (*People v. Gaines* (1934) 1 Cal.2d 110, 115 [34 P.2d 146]; *People v. Perkins* (1946) 75 Cal.App.2d 875, 878-879 [171 P.2d 919].) In such a case the expert's testimony should be admitted if it meets the test of relevance (Evid. Code, § 210) and is not inadmissible on some other ground (Evid. Code, § 351).

Dan DeFraga testified as an expert for the prosecution. While he showed some familiarity with the development of the HGN test, the proper procedure for its administration, and the various possible causes of nystagmus, he did not offer any opinion as to Vega's test given to appellant or as to what caused the nystagmus Vega observed in appellant. Was DeFraga's testimony nevertheless relevant and properly admissible to give the jury a factual basis for concluding that Vega's test results showed appellant was under the influence of alcohol? On the record before us, we think not.

DeFraga's testimony, both in the Evidence Code section 402, subdivision (b) hearing, and before the jury, merely stated that nystagmus symptoms can be brought on by the presence of alcohol in the subject's system, but he readily admitted that many other factors can be responsible and could lead to a "false positive." He did not quantify the relationship between alcohol and nystagmus. He conceded there is disagreement within the scientific community on the accuracy of the HGN test for detecting the presence of alcohol, with some people dismissing it as "meaningless."

DeFraga's testimony was not sufficiently factual to aid the jury in making a meaningful evaluation of Vega's observations when he administered the test to appellant. At best it merely furnished a basis for the jury to speculate that appellant's nystagmus was caused by alcohol.

### D. *Whether the Kelly-Frye rule applies to HGN testing is not ripe for decision in this case.*

Both at trial and on appeal Williams argued that results of an HGN test are not admissible until the prosecution has first satisfied the *Kelly-Frye*[3] foundational requirement by showing that the test has met with general accep-

---

[3]*People* v. *Kelly, supra,* 17 Cal.3d 24; *Frye* v. *United States, supra,* 293 F. 1013.

tance within the relevant scientific community as a means of ascertaining alcohol presence in the subject's system.

While no California court has yet squarely decided this question,[4] the issue has received much attention recently in other jurisdictions. (See, e.g., *State* v. *Superior Court, supra*, 149 Ariz. 269 [718 P.2d 171]; *State* v. *Borchardt* (1986) 224 Neb. 47 [395 N.W.2d 551]; *State* v. *Reed* (1987) 83 Ore.App. 451 [732 P.2d 66]; *Commonwealth* v. *Miller* (1987) 367 Pa.Super. 359 [532 A.2d 1186]; *State* v. *Barker* (1988) __ W.Va. __ [366 S.E.2d 642]; *Lancaster* v. *State* (Tex.Ct.App. 1988) 772 S.W.2d 137; *State* v. *Clark* (1988) 234 Mont. 222 [762 P.2d 853]; *Malone* v. *City of Silverhill* (Ala.Cr.App. 1989) 575 So.2d 101; *State* ex rel. *Hamilton* v. *City Court of City of Mesa* (1990) 165 Ariz. 514 [799 P.2d 855]; *State* v. *Armstrong* (La.Ct.App. 1990) 561 So.2d 883; *State* v. *Murphy* (Iowa 1990) 451 N.W.2d 154; *State* v. *Bresson* (1990) 51 Ohio St.3d 123 [554 N.E.2d 1330]; *Finley* v. *State* (Tex.Ct.App. 1991) 809 S.W.2d 909; and *State* v. *Garrett* (1991) 119 Idaho 878 [811 P.2d 488]; Annot., Horizontal Gaze Nystagmus Test: Use in Impaired Driving Prosecution (1988) 60 A.L.R.4th 1129.)

We have already decided, on other grounds, that the nystagmus evidence offered below was improperly admitted. We cannot predict that any nystagmus evidence will be offered if the case is retried, or, if so, what form that evidence may take. Under these circumstances, it would be inappropriate for us to address an issue which may not arise at retrial. Accordingly, we express no opinion on the *Kelly-Frye* question.

III. *If appellant is retried and convicted, the court may not use the same factor to both aggravate and enhance the sentence.*\*

. . . . . . . . . . . . . . . . . . . . . . . . .

---

[4]In *People* v. *Loomis* (1984) 156 Cal.App.3d Supp. 1, 6-7 [203 Cal.Rptr. 767], the court suggested that *Kelly-Frye* applies to testimony, based on nystagmus testing, that the defendant's blood-alcohol level was 0.12 percent. The suggestion appears to be dictum because the court had already held the testimony was improperly admitted as lay opinion. The case is also factually distinguishable because here Vega did not, and was not permitted to, quantify appellant's blood-alcohol level. In *People* v. *Ojeda, supra*, 225 Cal.App.3d 404, no objection was made on *Kelly-Frye* grounds, so the appellate court expressly did not decide whether the *Kelly-Frye* criterion was applicable. (*People* v. *Ojeda, supra*, at pp. 407-409.)

\*See footnote, *ante*, page 1326.

## Disposition

The judgment on count 1 of the information is reversed.

Ardaiz, Acting P. J., and Dibiaso, J., concurred.